UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:14-CR-35-HAB |
| ) | |
| KEITH PERKINS ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Compassionate Release Pursuant to Title 18 U.S.C. § 3562(c)(1)(A) (ECF No. 465). Defendant's motion was referred to the Federal Community Defender on April 15, 2021, to allow the FCD to consider representing Defendant on his motion. The FCD declined representation on April 19, 2021. Defendant separately filed a motion requesting appointment of counsel on his behalf (ECF No. 468), which motion was denied. (ECF No. 475). The Government has filed its Opposition to Defendant's motion (ECF No. 470), and the time for Defendant's reply has passed. This matter is now ripe for determination.

**A.   Defendant's Criminal Conduct**

Defendant was involved in two robberies of the iAB Financial Bank in Harlan, Indiana, in 2014. While his role was limited to that of a getaway driver in the second robbery, he was actively involved in the first, demanding money from tellers while displaying a firearm. A total of approximately $18,000.00 was taken over the two robberies.

Defendant was indicted on the second robbery on September 24, 2014, with a Superseding Indictment filed on February 25, 2015. He was indicted on the first robbery on the same day that the Superseding Indictment was handed down. Defendant was sentenced on both robberies on

August 10, 2017. He received a total of 171 months' incarceration. He is currently incarcerated at FCI Fort Dix, with an anticipated release date of November 3, 2026.

**B.     Legal Analysis**

Defendant's motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

>  (1) in any case --
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because Defendant, not the Director of the BOP, filed the motion, the Defendant must first demonstrate that he has satisfied the statutory exhaustion requirement. The Government asserts that Defendant "failed to exhaust his administrative remedies within the BOP and/or to prove that he has exhausted administrative remedies." (ECF No. 470 at 3). However, Defendant has provided the Court with a copy of the request he sent to the warden at FCI Fort Dix seeking compassionate release (ECF No. 465 at 16) and he asserts that the warden failed to respond within thirty days. The Government provides no evidence or argument to rebut Defendant's claims. Accordingly, the Court finds, on the record before it, that Defendant has met the exhaustion requirements.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, have not been amended to reflect the First Step Act's change to § 3582(c)(1)(A) allowing prisoners to bring compassionate release claims directly before the court. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Accordingly, "§ 1B1.13 and its application notes provide useful – but not binding – guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v. Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938 F.3d at 1180). Indeed, "[d]istrict judges must operate under the statutory criteria–'extraordinary and compelling reasons'–subject to deferential appellate review." *Gunn,* 980 F.3d at 1181.

Using the guidance of §1B1.13 to inform the statutory criteria, the court considers the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes.[1] Second, the Court determines whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18

---

[1] However, as *Gunn* made clear, the policy statement's requirement that the court consider whether the reduction is otherwise "consistent with this policy statement" does not limit a district judge's discretion. This is because the statute by which the district court is bound requires a reduction to be consistent with "applicable policy statements." And, the Sentencing Commission has not yet issued a policy statement "applicable" to the Defendant's request. Thus, *Gunn* held, "[a]ny decision is 'consistent with' a nonexistent policy statement." *Gunn*, 980 F.3d at 1180. !

3

U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court considers the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

Defendant reports only one medical condition in support of his release request, that being "COVID-19 Long Haul Syndrome." (ECF No. 465 at 3–4). Also known as "long COVID," the condition is marked by persistent symptoms including brain fog, fatigue, headaches, dizziness, shortness of breath, and others.[2] While such a diagnosis might weigh in favor of release, there is no evidence in the record supporting Defendant's claimed diagnosis. Instead, his BOP medical records show twelve negative COVID tests from June 2020 through April 2021. There are no medical records demonstrating that Defendant has ever complained of the kind of symptoms that are the hallmarks of long COVID. Defendant bears the burden of establishing his entitlement to

---

[2]https://www.ama-assn.org/delivering-care/public-health/covid-long-haulers-questions-patients-have-about-symptoms.

compassionate release. *United States v. Gold*, 2020 WL 2197839 at *1 (N.D. Ill. May 6, 2020). The Court is not inclined to simply take Defendant's word for it, particularly in the face of contrary medical records, and finds that he has failed to carry his burden.

As for his confinement, "the mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See Melgarejo*, 2020 WL 2395982, at *3. Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id.* at 5–6. *See also United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

The Bureau of Prisons continues to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven, https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp; *see also*, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp. As a sign of the success of those efforts, FCI Fort Dix currently reports *zero* active COVID-19 cases among its inmates. https://www.bop.gov/coronavirus/. Nor is there likely to be a major spike in COVID-19 cases in the future, as 1481 inmates at FCI Fort Dix have been fully vaccinated. *Id*. Notably absent from that number is Defendant, a fact that is at odds with his claimed concerns over contracting the virus while incarcerated.

The Court concedes that the § 3553(a) factors are a closer call. By all accounts, Defendant has had no disciplinary issues while incarcerated and has availed himself of vocational training.

5

However, a large percentage of Defendant's sentence is a ten-year, statutory mandatory minimum sentence for his violation of 18 U.S.C. § 924(c). Defendant has not completed that portion of his sentence, even with maximum good time credit applied. Since no amount of § 3553(a) factors could have brought him below a sentence of 120 months at sentencing, the Court sees no reason why, standing alone, they should do so now. *United States v. Wood*, 2020 WL 3819193 at *4 (N.D. Ind. July 8, 2020). Defendant's original sentence was imposed to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence and protect the public from further crimes of Defendant. Halving his sentence to a number he could not have been sentenced to originally, as Defendant now requests, would greatly undermine the statutory purposes of sentencing.

In sum, because this Court does not find that extraordinary and compelling circumstances exist for Defendant's release and that a reduction in sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release.

**C.     Conclusion**

For the foregoing reasons, Defendant's Motion for Compassionate Release Pursuant to Title 18 U.S.C. § 3562(c)(1)(A) (ECF No. 465) is DENIED.

SO ORDERED on May 27, 2021.

                                                     s/ Holly A. Brady  
                                                    JUDGE HOLLY A. BRADY  
                                                    UNITED STATES DISTRICT COURT